SENATOR, The (McCARTY v.). See Case No. 8,686.

2 [From 7 Chi. Leg. News, 162.]

## Case No. 12,666.

The SENATOR MIKE NORTON.

The TITAN.

Circuit Court, S. D. New York.

[Affirming Case No. 12,667. Nowhere reported; opinion not now accessible.]

## Case No. 12,667.

The SENATOR MIKE NORTON.

The TITAN.

[10 Ben. 440.] [1]

District Court, S. D. New York. May, 1879.[2]

COLLISION — STEAMERS IN EAST RIVER — LIGHTS — WHISTLES.

1. A collision occurred in the evening of October 1, 1875, about off pier 1, East river, in New York harbor between two steamers, the T. and S. M. N. The T. was bound from pier 5, East river, to pier 14, North river, to lay up for the night. The S. M. N. had towed a bark in from sea and anchored her between Bedloe's Island and the Battery, and was bound for pier 16, East river. Both boats had their lights set and burning. The pilot of the T. averred that a ferryboat having passed ahead of him going to the northward, he ported his wheel following her up, and as she passed him he saw both the red and green lights of the S. M. N. ahead of him about 400 to 600 yards off, his boat at the time making seven or eight miles an hour; that he at once blew one whistle and ported his wheel and kept on a port wheel till the S. M. N. came in collision with the T., striking her on the port side nearly at right angles; that the S. M. N. answered his single whistle with a single whistle, but that her pilot starboarded his wheel instead of porting it, and that when the vessels were three or four lengths apart he rang his jingle bell to give the T. more speed, and if possible, get by. The story of the S. M. N. was, that she made the green light of the T. on her starboard bow, whereupon the pilot of the S. M. N. blew two whistles and put her wheel slightly to starboard, and that the T., after waiting about a minute, answered with one whistle and ported her wheel and ran across the course of the S. M. N. and thus caused the collision. Held, that it is difficult to believe that, after the pilot of the S. M. N. had answered the single whistle of the T. with a single whistle, he starboarded his wheel.

2. If the account of the pilot of the T. were true, he was in fault, because as soon as he saw that the S. M. N. after having answered his whistle with one whistle, was running down on him with a starboard wheel, he should at once have stopped and backed, instead of increasing his speed.

3. On the evidence, the S. M. N. blew two whistles before the T. blew one, and at that time the green light of the T. alone was visible, and the S. M. N. did not answer the single whistle of the T. with a single whistle.

4. The T. was solely in fault for the collision.

In admiralty.

R. D. Benedict, for the Titan.

W. R. Beebe, for the Norton.

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

2 [Affirmed by circuit court. Case unreported.]

CHOATE, District Judge. These are cross libels to recover damages caused by a collision between the two steam tugs on the evening of October 1, 1875, about off pier 1, East river. The Titan was bound from pier 5, East river, to pier 14, North river, to lay up for the night. The Norton had towed a bark in from sea and had anchored her in the North river between Bedloe's Island and the Battery, and was bound for pier 16, East river. The collision happened after dark and both boats had proper lights. The tide was the first of the flood and the night clear.

The case of the Titan, as stated by her pilot, is that when he got out into the river from pier 5 and got straightened down, a ferryboat of the Hamilton ferry or South ferry line passed ahead of him going into her slip, which is between piers 1 and 2; that as she passed he ported his wheel, following her up; that when she got clear of him he made the lights of the Norton; that he saw both the red and the green light and that the two vessels were heading head on to each other and apparently somewhere from 400 to 600 yards apart; that he was making about seven or eight miles an hour; that on making the Norton he immediately blew one whistle and ported still more and kept on a port wheel to the time of the collision; that the Norton replied with one whistle, but instead of porting she starboarded so as to cross his course; that she kept on on a starboard wheel till the time of the collision, both vessels thus curving in towards the shore; that the vessels were about three or four lengths apart when he rang his jingle bell to give his vessel more speed, intending to get across the bows of the Norton; that just before the vessels came together he rang to stop and back, and his engine was reversed when the collision took place. The libel of the Titan states and the pilot testifies that at the moment of the collision the Titan was heading nearly square on to the shore, and the witnesses agree that the Norton's stem struck the port side of the Titan nearly at right angles, and a very short distance from the stem. Both vessels were injured.

The case of the Norton is that she shaped her course so as to clear the New York shore; that just before reaching off abreast of pier 1, East river, and well off the starboard bow of the Norton, the green light of the Titan was seen; that the red light was not then in sight; that as soon as the green light was seen the Norton blew two whistles and her wheel was put slightly to starboard; that the Titan did not reply promptly to the signal, but after waiting about a minute blew a single whistle and immediately made a rank sheer to starboard, hiding her green light and bringing her red light into view and throwing herself directly across the course of the Norton; that the Norton could not by a change of course avoid a collision, but she immediately stopped and backed, but nevertheless struck the port side of the Titan.

The evidence is conflicting, but the preponderance of the evidence is clearly with the Norton. The account given by the Titan is both improbable in itself, and, if correct, shows that she was at fault. It is difficult to believe that upon a signal of one whistle in reply to the Titan's one whistle, the pilot of the Norton should have starboarded, especially if at the time the vessels were heading head on. Of course it is not impossible, but the proof should be pretty strong. But if the account given by the pilot of the Titan is correct, it shows fault on his part, since, as soon as he discovered that the Norton, after giving one whistle as if she intended to pass on his port hand, was running down on to him on a starboard wheel, he should at once have stopped and backed instead of ringing to increase his speed, and it is quite probable that if he had done so the collision would have been avoided. His course was reckless in any view of the case, since his manoeuvre of driving ahead at increased rate of speed on a port wheel incurred the double risk of collision with the Titan and running into the piers, for which, as sworn in his libel and testified to by him, he was almost directly heading at the time of the collision. And the evidence shows that the collision happened a very short distance from the shore.

The evidence that the Norton blew two whistles before the Titan blew her one is, I think, satisfactorily proved by the witnesses from the Norton, some of whom were strangers to the Norton and have no interest or reason for bias in the cause. It is also sufficiently proved that at the time the Norton blew two whistles the green light of the Titan was alone of her side lights visible from the Norton. This being so, it follows that the Norton made the Titan and blew her two whistles before those on the Titan had observed the Norton. Nor is there any improbability or any serious difficulty in reconciling it with the testimony that, when the Norton made the Titan and blew her two whistles, the Titan was well on the starboard hand of the Norton and showing only her green light to the Norton, which position would have made this signal from the Norton, that they should pass each other on the starboard hand, proper. Making due allowances for inaccuracies of the witnesses, not at all improbable in respect to distances and periods of time testified to by them, and assuming that the Titan went out into the river beyond the line along and outside of the piers, which was the proper course of the Norton from Bedloe's Island to her point of destination, the Titan must have been in this relative position with respect to the Norton at some time after leaving her berth at pier 5, and before the collision. And the testimony showing that a tow was lying at piers

.2 and 3, makes it not improbable that she went out a considerable distance into the river. At any rate, I consider the testimony of those on the Norton as to what they saw, sufficient to prove this point, though it is somewhat at variance with the evidence of those from the Titan as to the distance that she went out,. and also is at variance with their testimony as to the bearing and the lights they saw when they made her. What the witnesses from the Norton say that they saw of the movements of the Titan, corresponds with what those on the Titan say that they did, making due allowance for differences as to time and distances. The pilot of the Titan admits that at some time after getting out into the river he ported and kept his wheel a-port till he blew the one whistle, and then still kept it a-port a little more up to the time of the collision. This corresponds with what those on the Norton say they saw; first the green light of the Titan, afterwards the green light disappearing and the red light appearing and the Titan sheering around on to the course of the Norton till the time of the collision. Assuming that the Titan went out far enough into the river to show her green light, before she began to swing around to starboard, or even a short time after she so began to swing, her movement in keeping on a port wheel until she ported still more to cross the bows of the Norton was such as her proper course into the North river around the Battery called for, and this she had entered upon, as her pilot admits, before she made the Norton. The fact testified to by the pilot of the Titan, that he made the lights of the Norton immediately upon the ferry boat crossing ahead of him so as to uncover her, does not, I think, even considering the testimony of the pilot of the Norton, that he made the light of the Titan after the ferry boat passed, have any strong tendency to affect the conclusion above drawn from the testimony as to the Norton having made the Titan first on her starboard hand, showing a green light and having given her two whistles, which she did not notice or reply to, except by shortly after blowing one whistle. This matter of the particular point of time when the ferry boat passed, the length of time after her passing and before the vessels made each other and the distance she passed ahead of the Titan is a matter involving judgment as to length of time and measure of distance peculiarly subject to error, both as matter of observation at the time and of recollection afterwards. It is not satisfactorily proved that the Norton blew one whistle after the Titan blew one, as testified to by those on the Titan.

The charge of negligence against the Titan is made out, in that she did not keep a good lookout; that she did not observe and respond promptly to the signal of the Norton; that she continued on a port wheel and gave a signal of one whistle to the Norton after the Norton had properly given her two whistles and had starboarded, as she was bound to do in accordance with the signal she gave; that she continued on her course with increased speed across the bows of the Norton after it was evident that by such course a collision was imminent; that she did not sooner stop and back.

The charge of negligence against the Norton is not proved. The testimony shows that she properly gave the signal of two whistles and starboarded; that as soon as there was any reason to suppose the Titan was changing her course so as to bring about a collision, she stopped and backed, but that the collision was then rendered inevitable by the fault of the Titan, and before the headway of the Norton could be entirely checked they came together.

Decree for the libellant against the Titan, with costs, and reference to compute damages. Libel against the Norton dismissed with costs.

[On appeal to the circuit court, the decree of this court was affirmed. Case unreported.]